UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

Plaintiff,

v.

JONATHAN ERIC GARDINER,

Defendant.

Petition DENIED WITHOUT PREJUDICE.  The proper procedure for review of Mr. Gardiner's pretrial detention is for his counsel to contact the

Case No.: 26-MJ-1865

Clerk's Office (5A) to request a bail hearing before the Magistrate Judge on duty. The Clerk of the Court shall close Dkt. No. 8.
SO ORDERED.

_____
USMJ 6/17/2026

## EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND EMERGENCY MOTION FOR IMMEDIATE RELEASE

### INTRODUCTION

This case presents extraordinary circumstances warranting immediate judicial intervention. Jonathan Eric Gardiner, a citizen of The Bahamas, did not voluntarily enter the United States. Rather, his presence resulted from an aviation emergency involving a domestic Bahamian flight traveling between Bahamian islands. Following the crash, federal authorities detained Mr. Gardiner on May 12, 2026, before any complaint had been filed.  (*See* 5/14/26 docket from the Middle District of Florida attached hereto as Exhibit 1).

The Government did not file a Criminal Complaint until May 14, 2026. Mr. Gardiner made his initial appearance on May 15, 2026. According to the Complaint, the investigation has been ongoing since at least 2023. Despite this alleged years-long investigation, no indictment has been returned.

### I.    STATEMENT OF FACTS

On May 12, 2026, Mr. Jonathan Eric Gardiner, a Bahamian national, was a passenger aboard a domestic Bahamian flight traveling from Abaco to Grand Bahama. The intended flight was a short journey expected to last approximately fifteen to twenty minutes. The weather conditions were clear, and Grand Bahama was plainly visible to the passengers while the aircraft

remained in flight. According to the pilot, all navigational instruments failed, and the aircraft ultimately crashed into waters off the coast of Florida.

Following the rescue, the remaining passengers were permitted to return on May 13, 2026, to The Bahamas after spending the night in a hotel. Only Mr. Gardiner and the pilot remained in the custody of United States authorities. The pilot was subsequently released and also returned to The Bahamas with the remaining passengers on the aforesaid date. At the time of the aviation emergency, no arrest warrant had been issued for Mr. Gardiner in either The Bahamas or the United States of America. Likewise, no criminal complaint had been filed against him.

Unlike the other passengers, Mr. Gardiner was not permitted to leave the hospital after being medically evaluated. Instead, there was an armed law enforcement officer guarding the area where Mr. Gardiner was receiving medical treatment and awaiting clearance for discharge. Once discharged from the hospital, Mr. Gardiner was transported to Port Canaveral and placed in a holding cell before being transferred to the Orange County Jail in Orlando, Florida. From that point forward, Mr. Gardiner remained continuously deprived of his liberty.

The Government did not file the Criminal Complaint until May 14, 2026, two days after Mr. Gardiner had already been detained. Thus, the Government elected to continue holding Mr. Gardiner before obtaining the charging document that initiated this prosecution.

According to the Criminal Complaint, federal authorities had been investigating several alleged drug trafficking organizations since at least 2023. Specifically, the Complaint alleges that "the Defendant, and others known and unknown, at least one of whom has been first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the Narcotics laws of the United States." (*See* Complaint attached hereto as Exhibit 2). Thus, by the Government's own

allegations, the investigation underlying this prosecution had been ongoing for approximately three years before Mr. Gardiner's detention.

The Government further alleges that approximately $30,000 in Bahamian currency was recovered from Mr. Gardiner following the aircraft incident and that the currency was contained in an envelope bearing the name of a Bahamian politician. The significance of those funds remains disputed.

The events giving rise to Mr. Gardiner's detention occurred on election day in The Bahamas. The passengers aboard the aircraft were engaged in election-related activities, including voting and campaign work. Mr. Gardiner did not voluntarily enter the United States. Rather, his presence in this country resulted solely from the aviation emergency that forced the aircraft into Florida waters.

Mr. Gardiner made his initial appearance on May 15, 2026, in the United States District Court for the Middle District of Florida. Following that appearance, he was transferred through multiple detention facilities, including the Orange County Jail, the Seminole County Jail, a detention facility in Oklahoma, and ultimately the Metropolitan Detention Center in New York, New York, where he is presently confined.

During the course of these transfers, neither undersigned counsel nor Mr. Gardiner's family had any meaningful communication with him. From June 14, 2026, until counsel ultimately learned of Mr. Gardiner's transfer to New York, counsel was unable to determine his custodial location or status and was therefore unable to communicate with him regarding his case, legal strategy, or ongoing proceedings. During this period, Mr. Gardiner was effectively inaccessible to both counsel and family members.

Upon information and belief, no grand jury proceeding relating to Mr. Gardiner has been disclosed on the public docket, and no indictment or superseding charging instrument has been filed. More than thirty days have now elapsed since Mr. Gardiner was first deprived of his

liberty. Even assuming, arguendo, that the operative date for purposes of 18 U.S.C. § 3161(b) is May 15, 2026—the date of Mr. Gardiner's initial appearance—the thirty-day period expired on June 14, 2026.

As of the filing of this Emergency Petition, no indictment has been returned, Mr. Gardiner has not waived indictment, and, upon information and belief, no excludable time exists sufficient to toll the thirty-day indictment period prescribed by the Speedy Trial Act. Accordingly, Mr. Gardiner remains incarcerated solely on a Criminal Complaint that was filed two days after his detention had already begun and for which no timely indictment has been obtained.

## II.    MEMORANDUM OF LAW

### A.    HABEAS CORPUS RELIEF IS AVAILABLE WHERE A PERSON IS HELD IN CUSTODY IN VIOLATION OF THE CONSTITUTION OR LAWS OF THE UNITED STATES.

Federal courts possess broad authority under 28 U.S.C. § 2241 to review the legality of executive detention. Habeas corpus remains the "fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969). The writ exists to test the legality of present physical confinement and to provide relief where custody violates federal law or constitutional guarantees. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

Mr. Gardiner challenges the legality of his continued detention. He has remained incarcerated for more than thirty days despite the absence of an indictment, despite never having waived indictment, and despite the Government's alleged investigation having existed since at least 2023. Under these circumstances, habeas review is appropriate.

### B.    THE GOVERNMENT HAS VIOLATED THE SPEEDY TRIAL ACT.

The Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on

which such individual was arrested or served with a summons in connection with such charges." <mark>18 U.S.C. § 3161(b)</mark>.

Mr. Gardiner was first detained by federal authorities on May 12, 2026. At a minimum, he made his initial appearance on May 15, 2026. Under either calculation, the thirty-day indictment period has expired.

As of the filing of this Emergency Petition on June 16, 2026, no indictment has been returned. Mr. Gardiner has not waived indictment. Upon information and belief, no excludable time exists sufficient to toll the running of the Act.

Congress enacted the Speedy Trial Act to prevent precisely this type of prolonged detention while the Government delays formal charging decisions. When the Government fails to obtain an indictment within the time prescribed by § 3161(b), dismissal of the complaint is required pursuant to <mark>18 U.S.C. § 3162(a)(1)</mark>.

Even accepting the Government's most favorable calculation and using May 15, 2026, as the operative date, the thirty-day period expired on June 14, 2026. The Government's continued detention of Mr. Gardiner without indictment violates the Speedy Trial Act and strongly supports immediate habeas relief.

### C.    CONTINUED DETENTION WITHOUT INDICTMENT VIOLATES THE FIFTH AMENDMENT.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." <mark>U.S. Const. amend. V</mark>.

The Supreme Court has repeatedly recognized that the Grand Jury Clause serves as a constitutional barrier against executive overreach and unfounded criminal accusations. *Stirone v. United States*, <mark>361 U.S. 212, 218-19</mark> (1960).

5

Mr. Gardiner has never waived indictment. Nevertheless, he remains incarcerated solely upon a Criminal Complaint. While a complaint may temporarily support arrest and initial proceedings, it cannot serve as the indefinite basis for continued detention where the Government has failed to secure an indictment within a reasonable period.

The constitutional concern is particularly acute here because the Government alleges an investigation that has existed since at least 2023. Having allegedly investigated the matter for years, the Government cannot continue to incarcerate Mr. Gardiner indefinitely while postponing presentation of its evidence to a grand jury.

**D.    THE GOVERNMENT CANNOT JUSTIFY CONTINUED DETENTION BASED UPON AN ALLEGED ONGOING INVESTIGATION.**

The Government may contend that additional time is necessary because of an alleged ongoing investigation. The Complaint itself, however, establishes that federal authorities have been investigating the alleged conspiracy since at least 2023.

The Government cannot simultaneously maintain that it possessed sufficient evidence to detain Mr. Gardiner and initiate criminal proceedings while also asserting that an alleged ongoing investigation excuses its failure to obtain an indictment.

If the Government possessed sufficient evidence to seek and maintain Mr. Gardiner's detention, then it possessed sufficient evidence to present the matter to a grand jury. Conversely, if the Government lacks sufficient evidence to obtain an indictment after years of investigation, then continued detention becomes increasingly difficult to justify.

Accepting the Government's position would permit detention based solely upon a complaint whenever prosecutors characterize an investigation as "ongoing." The Constitution permits no such result.

**E.    THE CIRCUMSTANCES OF MR. GARDINER'S DETENTION PRESENT EXTRAORDINARY DUE PROCESS CONCERNS.**

Unlike the typical federal defendant, Mr. Gardiner did not voluntarily enter the United States.

Rather, he arrived only because a domestic Bahamian flight traveling between Bahamian islands allegedly suffered complete navigational failure and crashed in waters off the coast of Florida. At the time of the crash, no warrant existed for Mr. Gardiner and no complaint had been filed.

The Government nevertheless detained Mr. Gardiner beginning on May 12, 2026. The Criminal Complaint was not filed until May 14, 2026.

The Due Process Clause protects individuals against arbitrary governmental restraint of liberty. *United States v. Salerno*, 481 U.S. 739, 746-52 (1987). Although Salerno upheld preventive detention in limited circumstances, it did so only because Congress provided extensive procedural safeguards and prompt judicial review.

Those safeguards are notably absent here. Mr. Gardiner remains incarcerated despite the absence of an indictment and despite the Government's reliance upon an investigation allegedly dating back several years.

**F.    MR. GARDINER'S DETENTION HAS SUBSTANTIALLY  INTERFERED WITH HIS RIGHT TO COUNSEL.**

The Sixth Amendment guarantees more than the mere appointment of counsel. It guarantees a meaningful opportunity to consult with counsel and assist in the preparation of a defense. *Powell v. Alabama*, 287 U.S. 45, 68-71 (1932); *Geders v. United States*, 425 U.S. 80, 88-91 (1976).

Here, Mr. Gardiner has been transferred through multiple detention facilities and ultimately transported to Oklahoma. During this process, counsel has effectively lost communication with him. Neither undersigned counsel or his family has had contact with him

since June 14, 2026.  It was not until today, June 16, 2026 when Mr. Gardiner contacted undersigned to let her know he was in custody at the Metropolitan Correctional Center in New York.

### G.   THE   TOTALITY   OF   THE   CIRCUMSTANCES   WARRANTS IMMEDIATE RELEASE.

This case does not involve merely a delayed indictment.

Rather, it involves a foreign national who entered the United States only because of an aviation emergency; who was detained before any complaint was filed; who remains incarcerated despite the absence of an indictment; whose detention is justified by reference to an alleged ongoing investigation dating back to at least 2023.

Viewed collectively, these facts demonstrate an extraordinary deprivation of liberty that warrants immediate intervention by this Court through issuance of the writ and an order directing Mr. Gardiner's immediate release.

**WHEREFORE**, for the foregoing reasons, the Defendant respectfully requests that this Court enter an Order ordering the immediate release of the Defendant.

### CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that a true and correct copy has been electronically filed with the Clerk of the Court utilizing the CM/ECF system on this 16th day of June 2026.

Respectfully submitted,

**SUSY RIBERO-AYALA, P.A.**
121 Alhambra Plaza
Suite 1500
Coral Gables, Florida   33134
Telephone:     (305) 854-4711
Facsimile:     (305) 489-8101

By:     /s/ *Susy Ribero-Ayala*
Susy Ribero-Ayala, Esquire
Florida Bar No.  993352
Sra@ralawmiami.com

8